IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | **Case No. 20-20184 (CML)** |
| | § | |
| **J.C. PENNEY DIRECT MARKETING** | § | **(Jointly Administered)** |
| **SERVICES LLC, et al** | § | **(Formerly Jointly Administered under** |
| | § | **J.C. Penney Company Inc., 20-20182)** |
| | § | |
| | § | |
| **OLD COPPER COMPANY INC. F/K/A** | § | |
| **JC PENNEY COMPANY INC. AND** | § | |
| **COPPER SUB CORPORATION INC.** | § | **Adversary No. _____** |
| **F/K/A JC PENNEY COPORATION** | § | |
| **INC., AS WIND DOWN DEBTOR IN JC** | § | |
| **PENNEY DIRECT MARKETING** | § | |
| **SERVICES LLC** | § | |
| | § | |
|     **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| **JACKSON WALKER LLP** | § | |
|     **Defendant** | § | |

# COMPLAINT

The Old Copper Company, Inc. f/k/a J. C. Penney Company, Inc. and Copper Sub Corporation, Inc. f/k/a J. C. Penney Corporation, Inc. as Wind Down Debtor in J. C. Penney Direct Marketing Services, LLC ("Plaintiff"), as a party-in-interest, respectfully submits this Complaint against Jackson Walker LLP as follows:

## I. OVERVIEW

1. The conclusion drawn by Judge Isgur as expressed in his September 20, 2024, disciplinary referral of Jackson Walker LLP ("JW") says it all:

> **Jackson Walker's deliberate failure to inform its clients [of the Relationship (defined below)] was an ethical breach that we cannot excuse.**[1]

---

[1] See Exhibit A, September 20, 2024, letter from the Hon. Marvin Isgur to Chief United State District Judge Randy Crane Re: Referral of Jackson Wallker LLP (the "Disciplinary Referral") at 4.

2. JW partner Elizabeth Freeman ("Freeman") and (now former) Judge David R. Jones ("Jones") were in a romantic relationship beginning in 2013 (the "Relationship"). From 2017 forward, they owned a home together.

3. JW represented JCP[2] in the JCP Cases (defined below). Jones presided over the JCP Cases. JW failed to inform JCP about the Relationship, *at any time*. Likewise, JW failed to make the necessary disclosures to the Court, creditors, and other parties-in-interest. Instead, JW consciously and deliberately made the economic decision to breach its duties to JCP, which rendered it no longer "disinterested" as required by the Bankruptcy Code. "It was the firm's duty to place the interest of its clients above its own interest."[3] JW's failure to do so was a breach of its duties to JCP, and *all fees* JCP paid JW should be disgorged.

## II. THE PARTIES, JURISDICTION, AND VENUE

4. Plaintiff is the successor to the associated debtors in possession in various chapter 11 cases filed in the Southern District of Texas by J.C. Penney Company, Inc. and certain of its affiliates (the "JCP Cases").[4] The JCP Cases were jointly administered under Case No. 20-20182. All post-confirmation matters are administered under Case No. 20-20184, which remains open in this Court.

---

[2] As used herein, "JCP" shall refer to J.C. Penney Company, Inc. and its affiliates in the JCP Cases set forth in footnote 2.

[3] Exhibit A at 4.

[4] The "JCP Cases" include: 20-20182, J. C. Penney Company, Inc.; 20-20198, Future Source LLC; 20-20183, J. C. Penney Corporation, Inc.; 20-20184, J. C. Penney Direct Marketing Services LLC; 20-20185, J. C. Penney Export Merchandising Corporation; 20-20186, J. C. Penney International, Inc ; 20-20181, J. C. Penney Properties, LLC; 20-20187, J. C. Penney Purchasing Corporation; 20-20188, JCP Construction Services, Inc. ; 20-20189, JCP Media, Inc.; 20-20190, JCP New Jersey, LLC; 20-20191, JCP Procurement, Inc.; 20-20192, JCP Real Estate Holdings, LLC; 20-20193, JCP Realty, LLC; 20-20194,1 JCP Telecom Systems, Inc.; 20-20195, JCPenney Puerto Rico, Inc.; 20-20196, JCPenney Services, LLC; 20-20197, jcpSSC, Inc.

5. Defendant Jackson Walker LLP is a law firm based in Texas and may be served through any partner, including managing partner Wade Cooper, at 2323 Ross Avenue, Suite 600, Dallas, Texas 75201.

6. This Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and exclusive jurisdiction under § 1334(e)(2). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. § 1409(a). Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

### III.   BACKGROUND

**A.   JW's Professional Obligations**

7. JW is a law firm based in Texas, comprised of attorneys licensed to practice under the laws of the state of Texas, including, among others, the Texas Disciplinary Rules of Professional Conduct and the Texas Rules of Disciplinary Procedure, as well as specific rules applicable to the courts and jurisdictions in which they are practicing. In bankruptcy cases, attorneys are subject to the rules specified in the Bankruptcy Code, and the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and the U.S. Trustee Guidelines. *See, e.g.*, Bankruptcy Code §§ 327-331; Bankruptcy Rules 2014-2017.

8. The retention of counsel representing bankruptcy debtors must be approved by the bankruptcy court, which can grant such application only if the attorney/firm (1) does not "hold or represent an interest adverse to the estate" and (2) are "disinterested." Bankruptcy Code § 327; Bankruptcy Rule 2014. In support of an application to be employed as counsel for a debtor, the attorney must file a verified statement identifying all "connections" with the parties in interest. Bankruptcy Rule 2014(a).

9.      A debtor's attorney's obligations do not end once the court approves retention. The attorney's compensation during the case is also subject to court approval. *See*, Bankruptcy Code §§ 328-331; Bankruptcy Rule 2016. The court may deny allowance of compensation if, at any time during the case, the attorney "is not a disinterested person, or represents or holds an interest adverse to the interest of the estate." Bankruptcy Code § 328(c).

**B.      The JCP Cases and JW's Retention and Compensation**

10.     JCP was a national retailer based in Texas. Needing to reorganize its debts during the COVID19 Pandemic, JCP sought the protection of the provisions of title 11 of the United States Code. JCP retained JW (as co-counsel) in early May 2020 to file petitions for relief in the United States Bankruptcy Court for the Southern District of Texas on May 15, 2020 (the "Petition Date") and represent it in the JCP Cases. At the time JCP retained JW, it was unaware of the Relationship, and JW did not inform it of the Relationship (nor did it inform JCP of the Relationship at any time, as discussed below).

11.     JCP filed its *Application to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for Debtors and Debtors in Possession* (the "Retention Application") on June 11, 2020 [ECF 685] [5], supported by the *Declaration of Matthew Cavenaugh* [ECF 685-2], a JW partner (the "Cavenaugh Declaration"). The Retention Application provided:

> "To the best of the Debtors' knowledge, these attorneys have no interest adverse to the Debtors or to the Debtors' bankruptcy estates and are disinterested. The Firm has no connections with the Debtors, the Debtors' creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any other person employed in the office of the United States Trustee herein, except as disclosed in the Cavenaugh Declaration."

[ECF 685 at 7.]

---

[5]   Unless otherwise noted, citation to "ECF" shall refer to the docket in Jointly Administered Case No. 20-20182.

12. The Cavenaugh Declaration likewise states that JW does not have any undisclosed "connections" and is "disinterested."[6] [ECF 685-2 at 5.] Specifically, the Retention Application and Cavenaugh Declaration did not disclose any Relationship between Freeman and Jones.

13. The Court entered its *Order Granting the Application of Debtors and Debtors-in Possession to Retain Jackson Walker LLP as Co-Counsel and Conflicts Counsel for Debtors and Debtors-in Possession* (the "Retention Order") on July 1, 2020 [ECF 963]. The Retention Order included the following language:[7]

> ORDERED that Jackson Walker LLP will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Jackson Walker LLP will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Fed. R. Bankr. P. 2014(a); it is further

14. After the Retention Order was entered, JW never supplemented the Cavenaugh Declaration. This failure goes beyond an innocent oversight. At least as of the Van Deelen Allegations (defined below) made on March 6, 2021, Cavenaugh consciously knew that his declarations might be considered false and even spent three hours on March 8, 2021, re-reading his declarations in prior cases:

> Matthew Cavenaugh <░░░░░░░>    ▶ 3/9/2021, 11:07 PM
> I only got 1 hour of sleep last night. 4 hours of just energy calls, and 3 hours of re reading all of my declarations in prior cases

---

[6] On June 29, 2020, Cavenaugh submitted a Supplemental Declaration, also with the conclusion JW was disinterested and there were no undisclosed connections. [ECF 899.]

[7] The Retention Order's requirement of continued disclosure is consistent with the law. *See, e.g., C&C Demo*, 273 B.R. at 507, quoting *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr.S.D.N.Y.1998) ("Continuing disclosure is necessary to preserve the integrity of the bankruptcy system by ensuring that the trustee's professionals remain conflict free.")

15. Apparently ignoring the purpose of disclosure and despite knowing about the Relationship, JW did not supplement its disclosures and instead filed its *Second Interim and Final Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from May 15, 2020 Through December 14, 2020* (the "Fee Application") [ECF 2739] on March 10, 2021 (less than 12 hours *after* a hearing in another case that directly related to JW's failure to disclose the Relationship). On April 5, 2021, JW certified the absence of objections to the Fee Application [ECF 2854]. Even in the face of the Van Deelen Allegations, Jones approved the Fee Application on April 8, 2021, approving JW's fees and expenses incurred from the Petition Date through Confirmation,[8] in the amount of $1,101,482.21 without requiring further disclosure.

C.   **Procedural History Related to the Relationship**

16. On information and belief, the Relationship began as early as 2013, and Freeman and Jones co-owned a home beginning in 2017. On May 14, 2018, Freeman left her employment as a law clerk for Jones to become a partner at JW. Obviously, at the time Freeman joined JW, she was aware of the Relationship. Thus, JW had imputed knowledge of the Relationship beginning in May 2018. Despite this knowledge, no one informed JCP of the Relationship when it retained JW two years later.

17. On March 6, 2021, Cavenaugh received an email from Michael Van Deelen ("Van Deelen"), a creditor in the *McDermott* case,[9] questioning the truthfulness of an anonymous letter he purportedly received the previous day claiming Freeman and Jones were in a romantic relationship (the "Van Deelen Allegations"). On March 8, 2021, Van Deelen informed the Court (Jones) of the Van Deelen Allegations by filing an addendum to a motion to recuse Jones (the

---

[8] The Court confirmed JCP's Plan of Reorganization on December 14, 2020, as amended December 16, 2020, (the "Confirmation Order") [ECF 2190].

[9] *Van Deelen v. Dickson (In re McDermott Int'l Inc.)*, Adv. No. 20-3309, (Bankr. S.D.Tex.), ECF No. 4 (July 23, 2020).

6

"Recusal Motion"). The Recusal Motion had been pending for seven months and, until supplemented by the March 8 addendum, was based on allegations unrelated to the Relationship.

18. At JW's request, the Court sealed the addendum to the Recusal Motion, thus shielding the Van Deelen Allegations from the public and parties in the various bankruptcy cases, including JCP. The hearing on the Recusal Motion was set for March 10, 2021, and assigned to Judge Isgur (the "Recusal Hearing"). Judge Isgur denied the Recusal Motion, leaving the case pending before Jones where the Van Deelen Allegations would remain under seal. Thus began a series of actions by decision makers at JW that were designed to evade their duties of disclosure to their clients and the Court.

19. The Relationship remained under wraps until October 2023 when Van Deelen filed suit against Jones and others. This suit and the Van Deelen allegations ignited a firestorm among the media and legal community. That same week, the United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit") opened an investigation of Jones.[10] The U.S. Trustee's Office filed *Motions for (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* in multiple bankruptcy cases, including the JCP Case [ECF 1236, 1351] (the "Rule 60 Motions"), all of which were consolidated for discovery and pretrial matters in a Miscellaneous Proceeding (Misc. Proc. No. 23-00645), which is pending before Chief Bankruptcy Judge Eduardo Rodriguez (the "Fee Dispute"). The parties have conducted considerable discovery in the Fee Dispute, including depositions of at least 18 JW attorneys (and former attorneys). Finally, Judge Isgur made the

---

[10] *Complaint Identified by the Chief Judge of the Fifth Circuit Court of Appeals Against United States Bankruptcy Judge David R. Jones, Southern District of Texas, Under the Judicial Improvements Act of 2002,* Complaint No. 05-24-9002 at pp. 2-3 (5th Cir. Oct. 13, 2023).

7

Disciplinary Referral, which is pending before Judge Lee Rosenthal in the United States District Court for the Southern District of Texas.

**D.     JW's Knowledge of the Relationship**

20. Cavenaugh and other JW attorneys testified in depositions that they did not know about the Relationship until Freeman, after being confronted about the Van Deelen Allegations, admitted a *past* Relationship, but denied it was ongoing. However, there is contradictory evidence on this point, and the evidence demonstrates that *at least* one JW attorney (other than Freeman herself) knew that Jones and Freeman jointly owned a home where they lived together well before the Van Deelen Allegations surfaced.

21. Cavenaugh testified in his deposition that he discussed the veracity of the Van Deelen Allegations with Freeman on March 10, 2021, "following the recusal hearing" despite JW's pleading that admitted JW attorneys discussed the Van Deelen Allegations with Freeman on March 6, 2021.[11] Cavenaugh, among other JW attorneys, failed to produce any text messages from this time period, claiming there were none. However, JW bankruptcy attorney Veronica Polnick ("Polnick") failed to delete relevant text messages from an old iPad. Even though Polnick turned the iPad over to JW months earlier, JW withheld the data until the eve of Polnick's deposition.

22. The text messages revealed that Cavenaugh and Polnick discussed the Van Deelen Allegations with Freeman on March 6, 2021, almost immediately after receiving them. The messages further show that JW knew the significance of the Relationship, which had the potential to wreak havoc on their lucrative bankruptcy practice.

---

[11] *Jackson Walker LLPs Response in Opposition to the United States Trustee's Amended and Supplemental Motion (1) Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) and Federal Rule of Bankruptcy Procedure 9024 Approving the Retention and Compensation Applications of Jackson Walker LLP, (2) Sanctions, and (3) Related Relief* [ECF 1472], JW stated: "Upon receiving the March 6, 2021 email, JW discussed the allegations with Ms. Freeman **that same day**. At that time, Ms. Feeman acknowledged the existence of a prior romantic relationship with former Judge Jones…."

8



23. Importantly, the text messages also indicate that several senior JW partners, including its general counsel, knew about the Relationship at least as early March 7, 2021, and worked to circle the wagons to protect JW:



24. Moreover, it appears that Polnick, a close friend of Freeman and Jones (and Jones' former law clerk) knew about the Relationship "before":



25. Polnick also testified she knew Freeman and Jones owned a home together and that her knowledge pre-dated her JW employment.

E.  **Defiling the Temple of Justice**[12]

26. When confronted with the Van Deelen Allegations in connection with a motion to recuse Jones, Cavenaugh immediately considered the truthfulness of prior disclosures. JW, on the other hand, also worried whether Jones would be permitted to remain their go-to judge or if he would be disqualified under 28 U.S.C. § 455.

---

[12] Disciplinary Referral at 1.

10

27. Despite undisputable knowledge and advice from its ethics attorney, JW never disclosed the relationship. In failing to do so, as Judge Isgur observed, JW "defiled the very temple of justice" it had profited from inhabiting. JW consciously chose not to disclose the Relationship

- in May 2018, when Freeman joined JW knowing of the Relationship, thus imputing such knowledge to JW,
- in 2019, when JW hired a bankruptcy lawyer who knew that Jones and Freeman owned a house together in addition to another partner who knew of the relationship,
- in May 2020, when JCP retained JW to assist with JCP Cases,
- on June 11, 2020, when JW filed an application to be retained as counsel for JCP,
- anytime after July 2020, when it failed to supplement the Cavenaugh declaration despite the Retention Order directing supplementation,
- prior to December 24, 2020, when it confirmed a plan of reorganization that allegedly released JW from any liability,[13]
- on March 6, 2021, when it learned of the Van Deelen Allegations and Freeman confirmed a past relationship,
- on March 10, 2021, when it filed its final Fee Application in the JCP Cases seeking approval of $1,101,482.21 in fees,
- when outside ethics counsel advised it to disclose,
- on February 22, 2022, when a JW partner learned from a friend that Freeman and Jones lived together,
- in March 2022, when Freeman confirmed a present Relationship and cohabitation in a jointly owned home,
- in December 2022, when JW terminated Freeman so that it could keep appearing in front of Jones, or
- ever.

28. Instead, JW took inadequate actions in an attempt to address the issue. It "removed" Freeman from cases before Jones. It allegedly took measures to prevent Freeman from profiting off cases before Jones, even though the evidence will show that JW still paid Freeman very handsomely for the originations of the cases in front of Jones. It asked Jones to make

---

[13] The Confirmation Order includes a release and exculpation of estate professionals, except where there is actual fraud, willful misconduct, or gross negligence. To the extent necessary, Plaintiff asserts that JW's failure to disclose was gross negligence, willful misconduct, and/or fraud, and therefore not released.

disclosure, which he refused to do. And, ultimately, it fired Freeman, while continuing to work with her on a contract basis. These half-hearted efforts did nothing to ameliorate its ethical duties. Simply put, the revenue from appearing in front of Jones outweighed JW's view of its professional obligations.

29. JW should have informed JCP about the Relationship. As Judge Isgur has observed, this clearly violated JW's duties to JCP.

## IV.     LEGAL CONCLUSIONS BASED ON JW'S NON-DISCLOSURE

**A.     JW's failure to disclose the Relationship is an independent ground for disgorgement.**

30. Disclosure of connections under Bankruptcy Rule 2014 is broader than the issue of conflicts and disqualification. *In re C & C Demo, Inc.*, 273 B.R. 502, 507 (Bankr. E.D. Tex. 2001). A professional has a duty to disclose *all* connections, regardless of whether the connection actually rises to a level that would disqualify the professional from employment under Bankruptcy Code § 327. *Id*. (quoting *In re Olsen Indus., Inc.*, 222 B.R. 49, 60 (Bankr.D.Del.1997)) ("A court may find a disclosure violation without holding that it would have found the law firm not disinterested given timely and complete disclosure.").

31. In the JCP Cases, as Judge Parker in *C&C Demo* explained, it was the failure to disclose itself at issue – the timing of inquiry is irrelevant; any lack of intent to hide the connection is irrelevant; consent (or lack of objection to) the retention is irrelevant; the quality of counsel's work or the fact the parties are pleased with the work is irrelevant; the degree to which the bankruptcy cases have progressed is irrelevant. *Id*. at 507-08. The Court cannot speculate as to whether JW's retention would have ultimately been approved if the Relationship had been properly disclosed, "because the disclosure omission by the Debtor's counsel precluded the Court from independently making that determination." *Id*. at 508.

> It is simply imperative that every doubt which might arise in the mind of a debtor's attorney in this area is construed in favor of disclosure, and every attorney seeking

12

employment under § 327 must exercise dedicated diligence in disclosing and, if necessary, supplementing a prior disclosure, regarding any "connections" which he may have with the debtor, creditors, or other parties in interest or risk the consequences of any failure in that regard.

*Id.*

32. Bankruptcy courts have the authority and duty to police the disclosure requirements with its sanction power, including to "order the disgorgement of all sums received by counsel and the forfeiture of all compensation paid to counsel in a particular case, regardless of whether the undisclosed connections were materially adverse or only of a *de minimis* nature." *Id.*

**B.  JW was not disinterested, as a matter of law, because it breached its duties to JCP.**

33. Bankruptcy Code § 101(14) defines "Disinterested Person" as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. §101(14)(C). Thus, by definition, "disinterested person" excludes anyone who possesses an interest adverse to the estate.

34. As Judge Isgur concluded in the Disciplinary Referral, JW breached its ethical duties to its clients by not disclosing the Relationship to them. *See* Exhibit A.

35. If JW breached its ethical duties, then it was not "disinterested" as a matter of law. In other words, if JW had a duty to disclose the Relationship at the time it was retained or before it filed its Retention Application, or at any time subsequently, and failed to do so, then the JCP estate held a claim (breach of fiduciary duty) against JW. A professional which the estate possesses a claim against cannot, by definition, be "disinterested." *See* 11 U.S.C. § 101(14)(A) (stating that a disinterested person "is not a creditor"); *See also, In re Pillowtex, Inc.*, 304 F.3d 246, n. 3 (3d Cir. 2002) (holding that if the estate possesses a claim against a professional such professional cannot be disinterested).

13

36.     Thus, if JW, through Freeman, Polnick, Cavenaugh, or any other JW attorney, knew of the Relationship, JW had an obligation to disclose the Relationship to JCP. Failure to do so means JW was not "disinterested" and was not qualified to represent JCP. Nonetheless, JW went forward with the representation in the JCP Cases and collected large amounts of fees.

**C.     JW had imputed knowledge of the Relationship**

37.     The knowledge of an attorney regarding connections with parties-in-interest must be disclosed by the law firm, and the law firm is responsible if the disclosures are not properly made. The actual knowledge of Freeman, Cavenaugh, Polnick, and other JW attorneys is imputed to JW as a matter of law. As the Fifth Circuit has recently confirmed, the knowledge of an agent (here, the partners) is attributed to the principal (here, JW) for the purpose of liability. *See In re Black Elk Energy Offshore Operations, LLC,* 114 F.4th 343, 354-56 (5th Cir. 2024) (finding that even an agent's knowledge of her own fraudulent acts can be imputed to the principal when those acts are within the scope of the agent's duties).

38.     If JW, through Freeman, knew as of 2018 that the Relationship could render it disinterested, potentially making its retention improper, JW had a duty to inform JCP of that fact at the time JCP sought to retain it to file the JCP Cases. It did not do so. JCP paid JW's fees without proper knowledge.

**D.     JW Violated the Terms of the Retention Order**

39.     The Retention Order expressly required JW to supplement its declaration "if any new facts or relationships are discovered or arise." JW did not do so, and the terms of the Retention Order were clearly violated.

40.     Even assuming JW attorneys other than Freeman did not have knowledge of the Relationship until March 6, 2021, at that moment, it had a duty to inform JCP and the Court that it was no longer disinterested, and that, in fact, it had not been disinterested at the time JCP retained

14

JW to represent it.[14]  It did not do so, and, instead, hurriedly sought final approval of all fees incurred during the JCP Cases.

## V.     CLAIMS FOR RELIEF

**A.     Cause of Action No. 1 – Disgorgement for Failure to Make Bankruptcy Disclosures**

41.     Paragraphs 1- 40 above are realleged and incorporated herein by reference.

42.     JW's failure to disclose the Relationship as required by the Bankruptcy Code and Bankruptcy Rules, justifies disgorgement of all fees it received from JCP.

43.     As explained by the Fifth Circuit:

> Courts may deny all compensation to professionals who fail to make adequate disclosure, and 'counsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation.'

*In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 465–66 (5th Cir. 2012) (quoting West Delta Oil Co., 432 F.3d 355 (5th Cir. 2005)).  "A bankruptcy court should punish a willful failure to disclose the connections ... as severely as an attempt to put forth a fraud on the court." *In re Crivello*, 134 F.3d 831, 839 (7th Cir.1998).

44.     Full disclosure is mandatory, and less than full disclosure may result in disqualification and denial of all compensation, regardless of whether the undisclosed connections were materially adverse to the estate. *In re Gulf Coast Orthopedic Ctr.*, 265 B.R. 318 (Bankr. M/D/ Fla. 2001).

45.     JW's continued failure to disclose the Relationship to JCP and the Court was intentional and flagrant.  All fees paid by JCP to JW should be disgorged.

**B.     Cause of Action No. 2 – Breach of Fiduciary Duty**

46.     Paragraphs 1- 45 above are realleged and incorporated herein by reference.

---

[14] "Once Jackson Walker learned from Ms. Freeman that there had been a prior relationship, its ability to defend its non-disclosure ended." Disciplinary Referral at 2.

47. JW owed a fiduciary duty to JCP. Its failure to disclose the Relationship at the time it was retained by JCP and/or prior to seeking final approval of its fees and its failure to follow court orders concerning its employment was a breach of that duty. *See, generally,* Disciplinary Referral.

48. An attorney's breach of its fiduciary duty to its client may result in disgorgement of the fees paid by the client to the attorney. The primary purpose of disgorgement is to protect relationships of trust by discouraging disloyalty, rather than to compensate the injured party. *Burrow v. Arce*, 997 S.W.2d 229, 241 (Tex. 1999); *Diakiw v. Stites Mgmt., L.L.C.*, 693 S.W.3d 582 (Tex.App.—Houston [14th Dist.] Nov. 21, 2023, pet. denied). Courts may order disgorgement of fees or profits wrongfully obtained by the fiduciary as a remedy for such breaches. *Id*. Furthermore, a client need not prove actual damages to obtain forfeiture fees as a remedy for breach of fiduciary duty. *Id*.

49. Based on the conscious actions (and inactions) of JW discussed above, JCP requests full disgorgement of JW's fees.

**C.     Cause of Action No. 3 –Negligence**

50. Paragraphs 1- 49 above are realleged and incorporated herein by reference.

51. JW failed to put policies and procedures in place to prevent the failure to make proper disclosures. Even when JW admitted that it heard allegations about the Relationship, it failed to exercise normal care to investigate the facts. As only one example, JW waited months to interview Freeman. JW did not even ask Polnick or other attorneys with knowledge of the Relationship what they knew about it. As a result, JCP was never told of the Relationship by JW.

52. Disgorgement is a proper remedy for an attorney's violation of disclosure obligations under the Bankruptcy Code and Rules, even if the failure to disclose was due to negligence or inadvertence. *C & C Demo,* 273 B.R. at 507.

16

## V.      CONCLUSION

53. Despite JW's imputed knowledge of the Relationship at the time JCP retained it, and despite actual knowledge no later than March 7, 2021, JW never apprised JCP of the Relationship and never supplemented its disclosures as required by the Retention Order and the Bankruptcy Code. JW's failure to disclose in and of itself negated the "disinterested" requirement as a matter of law. Instead of issuing a supplemental disclosure, JW proceeded to file the Fee Application immediately when news of the Relationship threatened to become public. At a minimum, JW had a duty to inform JCP of the allegations and the potential risk.

54. JW's failure to properly inform JCP of the Relationship was a breach of its duties to JCP. Its failure to implement proper procedures to avoid or correct the non-disclosure was negligent and a breach of its fiduciary duties. The law does not require actual harm to disgorge JW of its fees, and JW's fees paid by JCP should be disgorged in full. In addition, JCP has suffered additional damages as a result of the nondisclosure because of the investigation and various proceedings designed to uncover the depths of JW's actions. JCP should also be awarded those damages.

Dated: January 28, 2025          Respectfully submitted,

                                                            STREUSAND, LANDON, OZBURN
                                                            & LEMMON LLP

                                                            By:  /s/Stephen W. Lemmon
                                                                Stephen W. Lemmon
                                                                State Bar No. 12194500
                                                                lemmon@slollp.com
                                                                Rhonda Mates
                                                                State Bar No. 24040491
                                                                mates@slollp.com
                                                                1801 S. MoPac Expressway, Suite 320
                                                                Austin, Texas 78746
                                                                (512) 236-9900; (512) 236-9904 (Fax)

                                                            **ATTORNEY FOR OLD COPPER
                                                            COMPANY, INC.**

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served on this 28th day of January 2025 upon all parties registered to receive such electronic notices in this case via this Court's ECF Notification system.

                */s/ Stephen W. Lemmon*
                Stephen W. Lemmon