IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED

FEB 1 0 2025

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| J. C. PENNEY DIRECT MARKETING | ) | Chapter 11 |
| SERVICES, LLC, *et al.*,[1] | ) | |
| | ) | Case No. 20-20184 (CML) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| ———————————————————— | ) | (Formerly jointly Administered under |
| OLD COPPER COMPANY INC. F/K/A JC | ) | J.C. Penney Company, Inc., 20-20182) |
| PENNEY COMPANY INC. AND COPPER SUB | ) | |
| CORPORATION INC. F/K/A JC PENNEY | ) | |
| CORPORATION INC., AS WIND DOWN | ) | Adversary Proceeding |
| DEBTOR IN JC PENNEY DIRECT MARKETING | ) | |
| SERVICES LLC | ) | No. 25-02002 (CML) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| JACKSON WALKER , | ) | |
| | ) | |
| Defendant. | ) | |

## NON-UPTIER CREDITOR ERIC LYNDELL MOORE'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING INTERVENTION IN ADVERSARY PROCEEDING

> If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion is filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty- one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.

---

[1] A complete list of each of the debtors in these chapter 11 cases may be obtained on the website of the debtors' claims and noticing agent at http://cases.primeclerk.com/JCPenney. The location of debtor J.C. Penney Company, Inc.'s principal place of business and the debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Plano, Texas 75024.

Eric Lyndell Moore, Non-Uptier creditor and Proposed Intervenor, *pro se* ("Mr. Moore")[2] in the bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors (the "Debtors"), hereby moves to intervene in the above-captioned adversary proceeding (the "Adversary Proceeding") pursuant to sections 105(a) and 1109(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 24 of the Federal Rules of Civil Procedure (the "Federal Rules"), as made applicable by Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this motion (the "Motion"), Mr. Moore respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Old Copper Company, Inc. (f/k/a J.C. Penney Company, Inc.) and Copper Sub Corporation, Inc. (f/k/a J.C. Penney Corporation Inc.), as Wind-Down Debtor in J.C. Penney Direct Marketing Services, LLC ("Plaintiff"), commenced an Adversary Proceeding against Jackson Walker, LLP seeking, among other relief, disgorgement of legal fees due to Jackson Walker's lack of disclosure of the relationship between Jackson Walker attorney Elizabeth Freeman and Judge David Jones.

2.      On September 20, 2024, United States Bankruptcy Judge Marvin Isgur issued a disciplinary referral recommending an inquiry into Jackson Walker under Rule 6 (see Dkt. 1651-1, Exhibit A). This litigation arises from the assertions made in that letter.

3.      A ruling in this Adversary Proceeding—addressing (i) Jackson Walker's breach of fiduciary duty and (ii) the disgorgement of legal fees—will result in factual and legal findings that will have precedential effects on creditors in interest in these Chapter 11 Cases.

4.      Accordingly, without intervention in the Adversary Proceeding, Mr. Moore and

---

[2] Other Non-Uptier creditors, including Barnett Capital Advisors and Michael Wachs (the "Joinder Parties") are joining this Motion. Collectively, Mr. Moore and the Joinder Parties own roughly $330M in 1st and 2nd Lien Non-Uptier bonds.

the Joinder Parties will be excluded from a proceeding that will result in highly relevant findings of fact and law directly affecting the recovery for creditors in interest.

5.     As a result, Mr. Moore and the Joinder Parties are necessary parties to the Adversary Proceeding. Accordingly, they seek leave pursuant to Bankruptcy Rule 7024 to fully intervene.

## JURISDICTION AND VENUE

6.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over the Debtors' Chapter 11 Cases and this Motion pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges (District Court General Order 2012-6)*, dated May 24, 2012 (the "Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1400.

7.     The statutory predicates for the relief sought herein are sections 105(a) and 1109(b) of the Bankruptcy Code, and Federal Rules 19 and 24, as made applicable to this Adversary Proceeding by Bankruptcy Rules 7019 and 7024.

### A.     General Background and the Chapter 11 Cases

8.     On May 15, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court"), thereby commencing these Chapter 11 Cases. No trustee or examiner has been appointed in the Chapter 11 Cases.

### B.     The DIP Facility

9.     Immediately before the Petition Date, the Debtors and a group of 1st Lien Holders entered into a Restructuring Support Agreement (the "RSA") and a commitment letter regarding the DIP facility to be provided by certain members of this 1st Lien Group and/or their affiliates.

3

The DIP facility is a senior secured priming facility with an aggregate face amount of $900 million, consisting of $450 Million of new money DIP Loans and $450 Million of a dollar-for-dollar roll up of 1st lien debt held by these same 1st Lien Holders.

10.     The 1st Lien Holders who rolled up their 1st Lien Debt into DIP Debt and/or new money (the "Uptier Group") were represented by Milbank, LLP. The 1st Lien Holders who were excluded from the Uptier Transaction (the "Non-Uptier Group") were first represented by Stroock/HB,[3] and later by Akin Gump.

11.     The Uptier Group and the Non-Uptier Group had a dispute over the interest rate of the DIP loan and other benefits that were alleged to be due only to the Uptier Group.

12.     A settlement between these groups was reached. In connection with that settlement, certain current members of Non-Uptier Group were allowed to exchange $53 million of their 1st lien bonds into DIP debt, to be allocated ratably among those members.[4,5]

13.     The Non-Uptier Group was not allowed to participate in the new money portion of the DIP Facility, nor did they receive any portion of the approximately $45 Million in commitment fees and upfront fees paid to the Uptier Group, as these fees were tied solely to providing new money. (See Dkt. 38)

14.     The Uptier Group was owed only $900 Million. However, they received more than 400% return, while members of the Non-Uptier Group, including Mr. Moore, received less than 10% recovery.

---

[3] See Dkt. 796

[4] The DIP debt did not increase above $900M. The initial Uptier Group exchanged $53M of their DIP debt for $53M of 1st lien debt belonging to these former members of the Non-Uptier Group, who joined the Uptier Group via this exchange.

[5] This $53 million amount represents approximately 11.8% of the $450 million roll-up debt (or approximately 5.9% of the aggregate of the DIP debt). The members of the Non-Uptier held approximately 16.33% of the 1st lien debt at that time.

**C.   An Undisclosed Uptier Transaction Violated § 1123(a)(4) by Unequally Treating Creditors, Contrary to the Fifth Circuit's *Serta Simmons* Ruling**

15.      The J.C. Penney bankruptcy case is a liquidation disguised as a sale. Defendant Jackson Walker colluded with the Uptier Group to unjustly enrich them, in violation of U.S.C. § 1123(a)(4) and the Fifth Circuit's recent *Serta Simmons* ruling.

16.      With the assistance of Defendant Jackson Walker, the Debtors participated in creditor skipping and multiple instances of members of the same creditor class receiving unequal treatment, as the Debtors' assets were distributed in violation of the absolute priority rule.

17.      Two classes of creditors were treated unequally: Secured Creditors who were not allowed to participate in the Uptier Transaction and all Unsecured Creditors, except the Debtors' landlords, who were unjustly enriched.

18.      Simon Growth Properties and Brookfield Properties were landlords for the Debtors. They were transferred billions in real estate and J.C. Penney's entire operating company without owning any of the secured debt used for the credit bid alleged to have purchased these assets, and without paying any cash to the Debtors. In fact, Simon and Brookfield received cash from the Debtors at closing.

19.      On December 31, 2024, the U.S. Court of Appeals for the Fifth Circuit ruled that mattress company Serta Simmons Bedding, LLC ("Serta") violated the "sacred right" of its lenders to ratable repayment by placing more than $1 Billion of new super-priority debt that would have priority over its existing indebtedness for such new indebtedness.[6] *In re Serta Simmons Bedding, LLC* Case No. 23-20181 (Fifth Cir. Dec. 31, 2024)

---

[6] The Fifth Circuit also found that the remedy sought by the Excluded Lenders did not require a stay of the sale and did not require the order approving the Plan or the Sale to be overturned, and that equitable mootness was not applicable.

20.     With Jackson Walker's assistance, the Non-Uptier Group was unlawfully denied equal and ratable payment. The Uptier Parties received more than 400% return on their 1st Lien Debt while the Non-Uptier Group received roughly 10% return.

21.     Unlike the *Serta Simmons* case, the disproportionate recovery granted to the Uptier Group in the J.C. Penney case was concealed and omitted from all key bankruptcy filings.[7]

## RELIEF REQUESTED

22.     Mr. Moore and the Joinder Parties seek entry of an order authorizing them to intervene in this Adversary Proceeding.

## BASIS FOR RELIEF REQUESTED

23.     Under the Bankruptcy Code, a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The Fifth Circuit has held, however, that the right to "appear and be heard" does not comprise an absolute statutory right to intervene in adversary proceedings under Federal Rule 24(a)(1). *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286-87 (5th Cir. 1985) (intervention under Federal Rule 24(a)(1) limited to those parties whom "a statute of the United States confers an unconditional right" to do so, but 11 U.S.C. § 1109(b) does not grant that right in the context of an adversary proceeding). However, the Fifth Circuit has stated that its interpretation "in no way restricts the broad, legitimate right to appear and be heard" that section 1109 of the Bankruptcy Code grants to parties in interest in bankruptcy matters. *Id.* at 1287; *accord Coral Petroleum, Inc. v.*

---

[7] The improper distributions that undermine the priority scheme are not disclosed in the Disclosure Statement (Dkt 1647), The Plan Dkt. 2190, Settlement Agreement (Dkt. 1814) or the APA (Dkt. 1668).

*Banque Paribas-London*, 797 F.2d 1351, 1363 (5th Cir. 1986) ("In *Fuel Oil*, we further held that the intervention rights under section 1109(b) are quite broad in keeping with the policies of the Bankruptcy Code..."). Parties in interest, then, "may still intervene as of right under Rule 24(a)(2)." *Fuel Oil*, 762 F.2d at 1287. Furthermore, "permissive intervention under Rule 24(b) is likewise a possibility." *Id*. Mr. Moore and the Joinder Parties satisfy the requirements for both mandatory intervention and permissive intervention.

24.     Mr. Moore is entitled to intervene as of right because (i) this Motion is timely; (ii) Mr. Moore has an interest in the property, causes of action, that are the subject of the Adversary Proceeding; (iii) 1st Lien creditor recoveries will be affected should the Court make findings of fact and conclusions of law relating to damages owed by Jackson Walker, and (iv) the interests of the Wind-Debtors are not wholly aligned with—and, in some instances, may be directly adverse to—the interests of Mr. Moore and the Joinder Parties. There may be instances where those interests diverge, and the Debtors therefore cannot adequately represent Mr. Moore's interests in the Adversary Proceeding.

25.     Mr. Moore and the Joinder Parties likewise satisfy the permissive intervention standards under Federal Rule 24(b) inasmuch as (i) Mr. Moore and Joinder Parties share common legal positions and underlying facts with the parties to the Adversary Proceeding and (ii) no party will face any prejudice or undue delay as a result of their intervention.

26.     For purposes of the notice and pleading requirement of Federal Rule 24(c), Mr. Moore and the Joinder Parties seek to intervene in all claims and causes of action asserted in the Complaint.

27.     Because Mr. Moore and the Joinder Parties are necessary parties and meet the conditions for both mandatory and permissive intervention, the Court should grant this

Motion.

**I.      Mr. Moore is Entitled to Intervene Under Federal Rule 24(a)(2).**

28.      Federal Rule 24(a)(1) permits intervention as of right when an applicant "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24

29.      Under Federal Rule 24(a)(2), a party in interest is entitled to intervene as of right upon satisfying the following requirements:

> (i) the intervention is timely, (ii) the movant has an interest in the property
>
> that is the subject of the action, (iii) resolution of the action would impair
>
> the movant's ability to protect their interest, and (iv) the movant's interest
>
> is inadequately represented by existing parties.

*In re Prescott*, 17-10199, 2019 WL 1889491, at *3 (Bankr. S.D. Tex. Apr. 26, 2019); *see also Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001) (*per curiam*). Mr. Moore and the Joinder Parties satisfy each of these requirements.

30.      First, the Motion is timely. The Fifth Circuit has identified four factors for courts to consider when determining the timeliness of a motion to intervene: (i) the length of time the intervenor knew or should have known of his interest in the case; (ii) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (iii) prejudice to the intervenor if his application for intervention is denied; and (iv) the existence of unusual circumstances. *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)). "These

8

factors are 'not a formula for determining timeliness'; instead, it should be determined based on all the circumstances." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 561 (5th Cir. 2003) (quoting *Doe #1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001)).

31.     Mr. Moore and the Joinder Parties are seeking to intervene at a time when the Adversary Proceeding is in its infancy. No scheduling conference has been set. Discovery has not commenced. Jackson Walker has yet to even answer or otherwise respond to the Complaint. Accordingly, no party can legitimately assert prejudice based on Mr. Moore having filed his Motion within a month of the commencement of the Adversary Proceeding. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977) (finding motion to intervene timely where applicants filed their petition less than one month after learning of their interest in the case)

32.     Second, Mr. Moore and the Joinder Parties have a significant protectable interest in the subject matter of the Adversary Proceeding, given that any findings of fact made in the Adversary Proceeding and the eventual outcome of the Adversary Proceeding directly and meaningfully affect (i) the money to be distributed to creditors and (ii) potential damages to be awarded. Indeed, the actions of Jackon Walker in this bankruptcy case have caused damages that exceed $1 Billion.

33.     Third, without intervention, the Adversary Proceeding poses a significant risk of impairing or impeding Mr. Moore's and the Joinder Parties' interests in these Chapter 11 Cases. Should the Court make factual or legal findings that bear directly on Mr. Moore's interests—without his involvement or input—his interests will be greatly impaired. *See, e.g., Espy*, 18 F.3d at 1207 (finding that the proposed intervenor's interests could be impaired by the precedential effect of an adverse resolution of the underlying action); *Laredo Energy Holdings,*

*LLC v. E&D Servs.*, No. 5:07-CV-67, 2007 U.S. Dist. LEXIS 83069, at \*6-7 (S.D. Tex. Nov. 6, 2007). Furthermore, if Mr. Moore is not permitted to intervene in this action, he may not have any input into settlement negotiations and/or discussions about damages by and among the parties.

34.     Fourth, only Mr. Moore and the Joinder Parties can adequately protect the interests of Non-Uptier parties in this Adversary Proceeding because the Wind Down Debtors and Mr. Moore have distinct interests.

35.     The burden of establishing inadequate representation is "minimal" and "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). Further, where the "ultimate objective" of the would-be intervenor differs from the parties in the underlying proceeding, the would-be intervenor's interests are not adequately protected.

36.     Here, the Wind-Down's focus is to disgorge roughly $1 Million in the legal fees paid to Jackson Walker for not disclosing the secret relationship Ms. Freeman had with Judge David Jones. Although this is proper, J.C. Penney's creditors have not been officially notified and allowed a timeframe to show damages (if any) caused by this improper relationship.

37.     The special relationship between Judge Jones and the Jackson Walker attorney was not merely improper because of the lack of disclosure of its existence. It was also improper because it was the very means by which the Defendants were able to subvert the bankruptcy code and circumvent its processes, resulting in substantial, demonstrable harm to Mr. Moore, the Joinder Parties, and other creditors.

38.     In a letter dated September 20, 2024, to Chief United States District Judge Randy Crane, Judge Isgur stated:

This issue may also require some caution. In most instances the creditors in cases are now in control of whether to bring actions by reorganized debtors against Jackson Walker. As set forth above, they appear to be deciding not to pursue matters. I am aware of only two instances in which creditors have voiced complaints and indicated their desire to move forward. The problem in those instances is that the confirmed chapter 11 plans may bar the creditors from seeking independent relief.

39.     Below is a partial list of the improper actions taken by Defendant Jackson Walker and Kirkland & Ellis that caused billions in damages to creditors, including Mr. Moore, and to the Estate of J.C. Penney. An impartial court would not have allowed these actions. However, due to the special relationship between Judge Jones and Elizabeth Freeman, Defendant Jackson Walker, as co-counsel for the Debtors in the J.C. Penney bankruptcy, committed multiple breaches of duty, including that they:

a.  Allowed the Uptier Group, who were owed only $900 Million, to receive over $3 Billion in concealed payments without disclosing this overpayment to the U.S. Trustee and affected creditors.

b.  Never provided a liquidating analysis as required in 1129(a)(7)

c.  Paid $23 Million to the Debtors' Investment Banker, Lazard, even though Lazard (i) failed to perform even the most basic of services appropriate to the gravity of their role in the bankruptcy proceedings–including failure to produce any valuation of the Debtors' assets–and (ii) alleged they couldn't get a better sale price than the price the Debtors had already agreed to prior to hiring them.

d.  Reported that an auction of the Debtors' assets occurred, when it was actually a private sale (See Dkt. 1814, "Private Sale is appropriate")

e.  Signed off on a status update (filed on November 1, 2023) alleging that only $1 Billion was available for distribution to creditors. However, audited financials of

the purchasers confirm that the amount distributed was actually more than $8 Billion.[8]

f. Argued that the Debtors' assets were "worth nowhere close to $8.4 Billion," on August 19, 2020, just 180 days prior to the alleged Purchasers of those assets documenting that they received over $8.4 Billion in assets from the Debtors.

g. Refused to provide to creditors, or file with the Bankruptcy Court, the distribution dollar amount received by the DIP Lenders.

h. Refused to provide to creditors, or file with the bankruptcy court, the judicially-determined valuation of the PropCo real estate.[9]

i. Maneuvered behind the scenes to select Judge Jones to preside over the J.C. Penney bankruptcy because Judge Isgur was deemed to be a "process hawk." [10]

j. Counseled the Debtors to enter into a Settlement agreement that violates the *AWECO*[11] and *Jevic* decisions.

k. Allowed an undisclosed Uptier Transaction to occur, which secretly distributed billions in assets to the certain 1st lien bondholders, and certain unsecured creditors, in violation of the Fifth Circuit's *Serta Simmons* decision and Section 1123(a)(4).

---

[8] See November 1, 2023 hearing transcript and Case Status Update Report of the same date (Dkt. 1245)

[9] The PropCo real estate was valued at $1.93B by the PropCo Trustee, and the court-ordered distributions were required to align with this valuation. However, defendant Jackson Walker has refused to honor this judicially-determined value in both its reporting and in distribution allocations.

[10] The fact that Judge Jones was the preferred judge to handle the J.C. Penney case came out in texts in the legal matter concerning the clawback of legal fees. (Case No. 23-00645, *In re Professional Fee Matters Concerning the Jackson Walker Law Firm*.) See also 10/17/24 Bloomberg article by James Nani, "Judge's Girlfriend Texts Indicate JCPenney Bankruptcy Maneuver"

[11] Finding that pre-plan settlements must comply with the absolute priority rule in re; Aweco 725 F. 2d 293 (5th Cir. 1984)

**II.     Alternatively, Permissive Intervention Under Federal Rule 24(b)(1) is Warranted**

40.     If the Court determines that Mr. Moore and the Joinder Parties are not entitled to intervene as of right, it should nonetheless permit them to intervene under Federal Rule 24(b).

41.     Under Federal Rule 24(b), if a proposed intervenor timely files a motion and "there is a common question of law or fact, the requirement of the rule has been met and then it is within the Court's discretion to allow or refuse intervention." *In re Charter Co.*, 50 B.R. 57, 63 (Bankr. W.D. Tex. 1985). In exercising its discretion under Federal Rule 24(b), the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3); *see also, e.g., Charter*, 50 B.R. at 63. "[T]he Court may consider 'whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit.'" *In re Smith*, 521 B.R. 767, 778 (Bankr. S.D. Tex. 2014) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984)). The Court may also consider the nature of the intervenor's interest. *Id*

42.     First, as previously explained, Mr. Moore has filed a timely motion.

43.     Second, Mr. Moore shares common questions of law and fact with the parties to the Adversary Proceeding.

44.     Mr. Moore's interests include, among other things: (i) making sure that the damage caused by Defendant Jackson Walker is clearly presented to the court, and (ii) ensuring that creditors have an opportunity to come forward and demonstrate any harm caused by the breach of fiduciary duty by Defendant Jackson Walker and Kirkland & Ellis. (ii) in the event of a recovery, ensuring the Uptier Group (which has been grossly overpaid) doesn't receive any more

13

payments from the Wind-Down Estate.

45.     Third, intervention will not unduly delay or prejudice the adjudication of any

party's rights.[12] As previously explained, the Adversary Proceeding remains in its very early

stages. Thus, allowing Mr. Moore to intervene at this stage will not cause any delay at all, much

less undue delay. *See, e.g., Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, No. H-05-3167, 2016

U.S. Dist. LEXIS 62404, at *16 (S.D. Tex. Aug. 16, 2006) (finding that where a case "is at an

early stage...intervention will neither delay the proceedings nor prejudice the existing parties").

Further, at this time Mr. Moore's involvement will not raise any new claims[13] in the Adversary

Proceeding. Accordingly, intervention by Mr. Moore will not significantly enlarge the scope of

litigation or discovery in the Adversary Proceeding, nor will it unduly prejudice the adjudication

of the rights of any party.

46.     Numerous other considerations strongly favor allowing Mr. Moore to intervene

permissively, including that: (i) Mr. Moore's interests are not adequately represented by the

Wind-Down Debtors; (ii) resolution of the issues in this Adversary Proceeding will directly

impact recoveries to 1st Lien Bondholders; and (iii) Mr. Moore's participation will promote

efficient resolution of the Adversary Proceeding.

## NOTICE

47.     Notice of this Motion will be provided to: (i) the Office of the United States

Trustee for the Southern District of Texas; (ii) counsel to the Debtors; (iii) counsel to Jackson

Walker; and (iv) any party that has requested service in this Adversary Proceeding. Given the

nature of the relief requested, Mr. Moore respectfully submits that no further notice of the

---

[12] Should the Court permit intervention, Mr. Moore will coordinate with the Wind-Down Debtors to avoid
duplication of effort where he and the Debtors' interests are aligned. *See Sierra Club v. Espy*, 18 F.3d 1202, 1205
(5th Cir 1994) (explaining that "[f]ederal courts should allow intervention 'where no one would be hurt and greater
justice could be attained") (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970))
[13] Breach of Fiduciary duty is already a count in the complaint.

14

Motion is necessary or required under the circumstances.

## NO PRIOR REQUEST

48.     No previous request for the relief sought herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE,** Mr. Moore respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) granting the Motion; (ii) allowing Mr. Moore and the Joinder Parties to intervene in the Adversary Proceeding as of right under Federal Rule 24(a), or, in the alternative, granting permissive intervention under Federal Rule 24(b); and (iii) granting such other and further relief as is just and proper.

Dated: February 10th, 2025

Respectfully submitted,

ERIC L. MOORE

/s/ *Eric L. Moore*

Eric L. Moore
202 Island Avenue
San Diego, CA 92101
Telephone: (336) 671-2193
Email: moorelyndell7@gmail.com

*Pro se*

## CERTIFICATE OF ACCURACY

I hereby certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.

/s/ *Eric L. Moore*

Eric L. Moore

## CERTIFICATE OF SERVICE

I hereby certify that on February 10th, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Eric L. Moore*

Eric L. Moore

16

**STREUSAND, LANDON, OZBURN & LEMMON LLP**

Stephen W. Lemmon
State Bar No. 12104500
Rhonda Mates
State Bar No. 24040491
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
Telephone: (512) 236-9900
Facsimile: (512) 236-9904
lemmon@slollp
mates@slollp.com

Counsel to Old Copper Company, Inc.

**NORTON ROSE FULBRIGHT**

1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151

Co-Counsel to Defendant Jackson Walker LLP

**RUSTY HARDIN & ASSOCIATES LLP**

5 Houston Center
1401 McKinney, Suite 2250
Telephone: (713) 652-9000

Co-Counsel to Defendant Jackson Walker LLP

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**

Joshua A. Sussberg, P.C. *(admitted pro hac vice)*
Christopher Marcus, P.C. *(admitted pro hac vice)*
Aparna Yenamandra *(admitted pro hac vice)*
Sarah R. Margolis
Michael A. Sloman
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
christopher.marcus@kirkland.com
aparna.yenamandra@kirkland.com
sarah.margolis@kirkland.com
michael.sloman@kirkland.com

Co-Counsel to the Debtors

**KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 6**

1100 Commerce Street, Room 976
Dallas, Tx 75242
Telephone: (214) 767-8967
Facsimile: (214) 767-8971
kevin.m.epstein@usdoj.gov

**MILLIE APONTE SALL
ASSISTANT U.S. TRUSTEE**

515 Rusk, Suite 3516
Houston, Texas 77002
Telephone: (713) 718-4650
Facsimile: (713) 718-4670
millie.sall@usdoj.gov

**HECTOR DURAN
OFFICE OF THE U.S. TRUSTEE**

515 Rusk St Ste 3516
Houston, TX 77002-2604
Telephone: (713) 718-4664
Hector.Duran.Jr@usdoj.gov

**BRIAN R. HENAULT
OFFICE OF THE U.S. TRUSTEE**

515 Rusk St Ste 3516
Houston, TX 77002-2604
Telephone: (713) 718-4653
Facsimile: (713) 718-4670
Brian.R.Henault@usdoj.gov

**CHIEF UNITED STATES DISTRICT
JUDGE RANDY CRANE**

Chambers of Judge Crane
1701 W. Business Highway 83, 9th Floor
McAllen, Texas 78501

17

## EXHIBIT A

Proposed Order

0

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| J. C. PENNEY DIRECT MARKETING | ) Chapter 11 |
| SERVICES, LLC, *et al.,*[1] | ) |
| | ) Case No. 20-20184 (CML) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) (Formerly jointly Administered under |
| OLD COPPER COMPANY INC. F/K/A JC | ) J.C. Penney Company, Inc., 20-20182) |
| PENNEY COMPANY INC. AND COPPER SUB | ) |
| CORPORATION INC. F/K/A JC PENNEY | ) |
| CORPORATION INC., AS WIND DOWN | ) Adversary Proceeding |
| DEBTOR IN JC PENNEY DIRECT MARKETING | ) |
| SERVICES LLC | ) No. 25–02002 (CML) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| JACKSON WALKER , | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING NON-UPTIER CREDITOR ERIC LYNDELL MOORE'S MOTION TO INTERVENE

Upon consideration of the motion (the "Motion") of Eric Lyndell Moore ("Mr. Moore")

of the above-captioned debtors and debtors-in-possession (the "Debtors") for entry of an order

pursuant to Bankruptcy Code sections 105(a) and 1109(b), Federal Rule 24, and Bankruptcy

Rule 7024 authorizing Mr. Moore and Joinder Parties[2] to intervene in the Adversary Proceeding;

and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334; and notice of the Motion and the opportunity for a hearing on the Motion being

---

[1] A complete list of each of the debtors in these chapter 11 cases may be obtained on the website of the debtors' claims and noticing agent at http://cases.primeclerk.com/JCPenney. The location of debtor J.C. Penney Company, Inc.'s principal place of business and the debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Plano, Texas 75024.

[2] Other non-uptier creditors, including Barnett Capital Advisors and Michael Wachs (the "Joinder Parties") are joining this Motion.

1

appropriate under the circumstances such that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED as follows:

1.    The Motion is GRANTED as set forth herein.

2.    Mr. Moore is authorized to intervene in the Adversary Proceeding and may participate fully therein with respect to all claims and causes of action.

3.    For the avoidance of doubt, the Debtors remain the representative of their estates pursuant to sections 323 and 1107(a) of the Bankruptcy Code, and nothing herein shall be construed to confer standing on behalf of the Debtors' estates to Mr. Moore with respect to any claim or cause of action.

4.    This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of this Order in all respects and further to hear and determine all matters arising from the construction and implementation of this Order.

Dated: _____, 2025

_____
THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE